# IN THE SUPREME COURT, STATE OF WYOMING

## 2013 WY 54

APRIL TERM, A.D. 2013

*May 8, 2013*

In re:

RALPH GIFFORD and BETTY J.
GIFFORD,

Debtors,

GARY A. BARNEY, TRUSTEE,

Appellant
(Plaintiff),

v.                                                                S-12-0177

BAC HOME LOANS SERVICING, L.P.,
its assigns and successors,

Appellee
(Defendant).

*W.R.A.P. 11 Certified Question*
*from the United States Bankruptcy Court for the District of Wyoming*
*The Honorable Peter J. McNiff, Judge*

*Representing Appellant:*
> Bradley T. Hunsicker and Stephen R. Winship of Winship and Winship, P.C., Casper, WY. Argument by Mr. Hunsicker.

*Representing Appellee:*
> Thomas M. Hefferon of Goodwin Proctor LLP, Washington, D.C.; and James R. Belcher of Belcher & Boomgaarden LLP, Cheyenne, WY. Argument by Mr. Hefferon.

*Before KITE, C.J., HILL, BURKE, and DAVIS, JJ., and GOLDEN, J., Retired.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**HILL,** Justice.

[¶1]    The United States Bankruptcy Court for the District of Wyoming certified a question to this Court concerning the effect of two Wyoming statutes on a debtor's mortgage.  Specifically, the bankruptcy court asks whether the mortgage must comply with Wyo. Stat. Ann. §§ 34-2-122 and 34-2-123.  We answer the question in the negative.

## ISSUE

[¶2]    The United States Bankruptcy Court for the District of Wyoming certified the following question to this Court:

> Whether the mortgage must comply with Wyo. Stat. Ann. §§ 34-2-122 and 34-2-123?

## FACTS

[¶3]    We draw the facts from the Statement of Undisputed Stipulated Facts filed by the parties in the bankruptcy adversary proceeding and referred to this Court with the certified question.

[¶4]    On January 26, 2006, Betty J. Gifford (Debtor) borrowed $438,400.00 from The Jackson State Bank & Trust (JSB) to finance a real estate purchase in Pinedale, Wyoming.  Debtor signed a promissory note (Note) agreeing to repay the loan and secured that loan with a mortgage (Mortgage).  JSB sold the loan to Countrywide Bank, N.A. (Countrywide), and JSB endorsed the Note, making it payable to Countrywide.  Countrywide later merged with and into Bank of America, N.A. (BANA), and BANA remains the current owner of the Note.

[¶5]    On February 1, 2006, the Mortgage was recorded in the Sublette County land records.  An assignment of the Mortgage from JSB to Mortgage Electronic Registration Systems, Inc. (MERS) was recorded in the Sublette County land records several days later on February 13, 2006.[1]

---

[1]   By way of background, the Tenth Circuit Bankruptcy Appellate Panel has described MERS and its operations as follows:

> MERS is a private corporation that administers the MERS System, a national electronic registry that tracks the transfer of ownership interests and servicing rights in mortgage loans. Through the MERS System, MERS becomes the mortgagee of record for participating members through assignment of the members' interests to MERS. MERS is listed as the grantee in the official records maintained at county register of deeds offices. The lenders retain the promissory notes, as well as the

1

[¶6]   The recorded assignment of the Mortgage to MERS did not describe MERS as an agent or as acting in a representative capacity.  The recorded assignment instead provided:

> FOR VALUE RECEIVED, the undersigned hereby grants, assigns and transfers to Mortgage Electronic Registration Systems, Inc. all the rights, title and interest of [the] undersigned in and to that certain Real Estate Mortgage dated January 26, 2006, executed by Betty J. Gifford, a married woman, to THE JACKSON STATE BANK & TRUST and whose address is 112 CENTER ST., P O BOX 1788 JACKSON, WY 83001 and recorded in Book/Volume No. 131 Mtg., page(s) 740, as Document No. 316732, Sublette Records, State of Wyoming on real estate legally described as follows:  Tract 1 of the Mountain View Ranches, Sublette County, Wyoming.

[¶7]   On October 21, 2009, MERS assigned the Mortgage to BAC Home Loans Servicing, LP (BAC), which was servicing the loan on behalf of BANA.  That assignment was recorded in the Sublette County land records on October 27, 2009, and

---

servicing rights to the mortgages. The lenders can then sell these interests to investors without having to record the transaction in the public record. MERS is compensated for its services through fees charged to participating MERS members.

The MERS system was designed to facilitate the transfer of notes and accompanying mortgages and deeds of trust because such transfers had become cumbersome under the traditional recording procedures. The system tracks transfers of promissory  notes and changes in loan servicers. In a mortgage loan transaction, MERS acts as the mortgagee and holder of the title to the security interest in a representative capacity as the agent (nominee) of the lender and the lender's successors and assigns. Subsequent transfers of the note as well as assignments of servicing rights are tracked in the MERS database, but are not recorded in the public records, since notes are not recorded. Upon transfer of a note secured by a mortgage, there is no separate assignment of the security interest and there is no change in the mortgagee, since MERS remains the mortgagee and holder of legal and record title to the mortgage on behalf of the new lender, as successor or assign of the original lender.

*Royal v. First Interstate Bank (In re Trierweiler*), 484 B.R. 783, 794-95 (B.A.P. 10th Cir. 2012) (quoting *Mortg. Elec. Registration Sys. v. Neb. Dep't of Banking & Fin.*, 704 N.W.2d 784, 785 (Neb. 2005)) (footnotes omitted).

again the recorded assignment did not describe BAC as an agent or as acting in a representative capacity. The recorded assignment reads:

> FOR VALUE RECEIVED, the undersigned hereby grants, assigns and transfers to BAC Home Loans Servicing, L.P., whose address is 400 Countrywide Way, SV 35, P.O. Box 10232, Simi Valley, CA 93065-6298, all the rights, title and interest in and to that certain Real Estate Mortgage dated January 26, 2006, executed by Betty J. Gifford, to the Jackson State Bank & Trust and recorded on February 1, 2006, at Reception No. 316732 in Book 131 at Page 740 of the Official Records in the County Recorder's Office of Sublette County, State of Wyoming on real estate legally described as follows:
>> TRACT 1 OF THE MOUNTAIN VIEW RANCHES, SUBLETTE COUNTY, WYOMING.
>> with an address of 49 Glacier Road, Pinedale, WY 82941
>> TOGETHER with all its rights, title and interest in the note thereon described or referred to, the money due and to become due thereon with interest.

[¶8]   The Debtor defaulted on her home loan by failing to make the monthly payment due on April 1, 2009, and failing to cure that default. Several months later, on December 11, 2009, Debtor and her husband filed a Chapter 7 bankruptcy petition. On November 30, 2010, the bankruptcy trustee initiated an adversary proceeding against BAC, seeking to avoid the Mortgage for, among other reasons, its failure to comply with the requirements of Wyo. Stat. Ann. §§ 34-2-122 and 34-2-123. On August 7, 2012, the bankruptcy court filed a Certification Order from the United States Bankruptcy Court for the District of Wyoming to the Supreme Court of the State of Wyoming requesting that this Court answer the certified question. The request was limited to the question of whether the Mortgage must comply with the requirements of §§ 34-2-122 and 123, and did not include certification of the trustee's other challenges to enforceability of the Mortgage. On August 29, 2012, this Court issued a Notice of Agreement to Answer Certified Question.

## DISCUSSION

[¶9]   The bankruptcy trustee argues that because the recorded assignments of the Mortgage, first to MERS and then to BAC, did not identify with specificity the terms of the agency relationship between the holder of the Note and the holder of the Mortgage, the recorded assignment did not comply with §§ 34-2-122 and 123. The trustee further argues that the failure to comply with these statutory terms renders the Mortgage

unenforceable. We disagree that Sections 122 and 123 operate in the manner urged by the bankruptcy trustee and instead conclude as BAC urges that the purpose and effect of these provisions is to bar an undisclosed or improperly disclosed principal from questioning an agent's authority to transfer a property interest to a third party. Given the plain language of the provisions and their narrow and specific purpose, we conclude that the provisions are not implicated in this case, and the Mortgage was not required to comply with Sections 122 and 123.

[¶10] Our analysis is one of statutory interpretation and it thus begins with the language of Sections 122 and 123 and our rules of statutory interpretation. Section 122 provides, in relevant part:

> In all instruments conveying real estate, or interests therein, in which the grantee is described as trustee, agent, or as in any other representative capacity, the instruments of conveyance shall also define the trust or other agreement under which the grantee is acting. . . . [O]therwise the description of a grantee in any representative capacity in each instrument of conveyance shall be considered and held to be a description of the grantee, only, and shall not be notice of any trust, agency or other representative capacity of the grantee who shall be held as vested with the power to convey, transfer, encumber or release the affected title. Whenever the grantee shall execute and deliver a conveyance, transfer, encumbrance or release of the property in a representative capacity, it shall not thereafter be questioned by anyone claiming as a beneficiary under the trust or agency or by anyone claiming by, through or under any undisclosed beneficiary. …

Wyo. Stat. Ann. § 34-2-122 (LexisNexis 2011).

[¶11] Section 123 provides, in relevant part:

> Any instrument which complies with this act [§§ 34-2-116, 34-2-122 and 34-2-123] shall be effective regardless of when it was executed or recorded. All instruments of conveyance to, or transfer, encumbrance or release of, lands or any interest therein within the state of Wyoming, which name a grantee in a representative capacity, or name a trust as grantee, and which fail to provide the information required by W.S. 34-2-122, shall cease to be notice of any trust or representative capacity of the grantee and shall be considered

4

and held to be a description of the grantee only, who shall be held to have individually, the full power to convey, transfer, encumber or release the affected title and no conveyance, transfer, encumbrance or release shall thereafter be questioned by anyone claiming with respect to the affected property, as a beneficiary or by anyone claiming by, through, or under an undisclosed beneficiary[.] …

Wyo. Stat. Ann. § 34-2-123 (LexisNexis 2011).

[¶12]   In carrying out our task of interpreting Sections 122 and 123, we use the following well established rules of statutory interpretation:

> In interpreting statutes, our primary consideration is to determine the legislature's intent. All statutes must be construed *in pari materia* and, in ascertaining the meaning of a given law, all statutes relating to the same subject or having the same general purpose must be considered and construed in harmony. Statutory construction is a question of law, so our standard of review is de novo. We endeavor to interpret statutes in accordance with the legislature's intent. We begin by making an inquiry respecting the ordinary and obvious meaning of the words employed according to their arrangement and connection. We construe the statute as a whole, giving effect to every word, clause, and sentence, and we construe all parts of the statute *in pari materia*. When a statute is sufficiently clear and unambiguous, we give effect to the plain and ordinary meaning of the words and do not resort to the rules of statutory construction. Moreover, we must not give a statute a meaning that will nullify its operation if it is susceptible of another interpretation.
>
> Moreover, we will not enlarge, stretch, expand, or extend a statute to matters that do not fall within its express provisions.
>
> Only if we determine the language of a statute is ambiguous will we proceed to the next step, which involves applying general principles of statutory construction to the language of the statute in order to construe any ambiguous language to accurately reflect the intent of the legislature. If this Court determines that the language of the statute is not ambiguous, there is no room for further construction. We will apply the language of the statute using its ordinary and

5

obvious meaning.

*Redco Constr. v. Profile Props., LLC*, 2012 WY 24, ¶ 26, 271 P.3d 408, 415-416 (Wyo. 2012) (quoting *Cheyenne Newspapers, Inc. v. Bldg. Code Bd. of Appeals*, 2010 WY 2, ¶ 9, 222 P.3d 158, 162 (Wyo. 2010)).  Even if a statute is unambiguous, this Court has recognized the benefit of looking to a statute's legislative history, however sparse that might be, to confirm the legislative intent reflected in the statute's plain language.  *See Parker Land & Cattle Co. v. Wyoming Game & Fish Comm'n*, 845 P.2d 1040, 1043-44 (Wyo. 1993); *see also Union Pac. Res. Co. v. Dolenc.*, 2004 WY 36, ¶ 15, 86 P.3d 1287, 1292 (Wyo. 2004); *Wilson v. State*, 841 P.2d 90, 94 (Wyo. 1992).

[¶13]  In the present case, the requirements of Sections 122 and 123 are not implicated for two reasons.  First, by their plain terms, the requirements of Sections 122 and 123 apply only to instruments in which the grantee is described as a trustee, agent, or as serving in any other representative capacity.  *See* § 34-2-122 ("In all instruments conveying real estate, or interests therein, in which the grantee is described as trustee, agent, or as in any other representative capacity, . . ."); § 34-2-123 ("All instruments of conveyance to, or transfer, encumbrance or release of, lands or any interest therein within the state of Wyoming, which name a grantee in a representative capacity, or name a trust as grantee, . . .").  It is undisputed that the recorded assignments of the Mortgage, first to MERS and then to BAC, do not identify MERS or BAC as a trustee, agent, or as serving in any other representative capacity.  Sections 122 and 123 therefore do not apply to the Mortgage assignments at issue in this case.

[¶14]  We further reject application of Sections 122 and 123 to the Mortgage assignments in this case because the statutes are notice statutes intended to apply in circumstances that simply are not presented by this case.  By their plain terms, the statutes operate to protect third parties from conflicting claims of principals and agents (or the conflicting claims of beneficiaries/trustees, or of the parties to any other representative relationship).  The statutes expressly provide that the effect of a lack of full disclosure of a principal or beneficiary is that the undisclosed principal or other beneficiary is thereafter barred from questioning the agent's authority to sell, transfer or release the property.  In particular, Section 122 directs that "[w]henever the grantee shall execute and deliver a conveyance, transfer, encumbrance or release of the property in a representative capacity, ***it shall not thereafter be questioned by anyone claiming as a beneficiary*** under the trust or agency ***or by anyone claiming by, through or under any undisclosed beneficiary***."  Wyo. Stat. Ann. § 34-2-122 (emphasis added).  Similarly, Section 123 specifies that the agent "shall be held to have individually, the full power to convey, transfer, encumber or release the affected title and ***no conveyance, transfer, encumbrance or release shall thereafter be questioned by anyone claiming with respect to the affected property, as a beneficiary or by anyone claiming by, through, or under an undisclosed beneficiary***."  Wyo. Stat. Ann. § 34-2-123 (emphasis added).

6

[¶15] The plain language of Sections 122 and 123 is consistent with the legislature's expressed purpose when it originally enacted the provisions in 1947:

> AN ACT for the protection of those dealing with trustees, agents and representatives; prescribing authority of trustees, agents and representatives where trust provisions are not set forth or beneficiaries are not named in the instrument of conveyance to such trustee, agent or representative and providing that any such existing or past conveyance shall not be notice unless related, sworn statement is filed within ten years.

1947 Wyo. Sess. Laws, Ch. 154; *see also In re Estate of Lohrie*, 950 P.2d 1030, 1033 (Wyo. 1997).

[¶16] By their plain terms and stated legislative purpose, Sections 122 and 123 do not invalidate or render unenforceable a mortgage simply because the recorded assignment of that mortgage fails to include the statutorily mandated description of the principal/agent relationship. Rather, the statutes operate to protect a third party who deals with the agent. Thus, if the agent transfers the property to a third party, the third party is protected against a claim by the agent's principal challenging the agent's authority to make the transfer. *See Lagae v. Lackner*, 996 P.2d 1281, 1285-86 (Colo. 2000) (holding similar Colorado statute to be a notice statute with the purpose of eliminating duty of inquiry and preventing an undisclosed beneficiary from contesting the interest of a subsequent taker); *see also Trierweiler*, 484 B.R. at 794-95 (holding Wyo. Stat. Ann. § 34-2-122 is a notice statute and trustee's attempt to invalidate mortgage was outside statute's intended purpose).

[¶17] Based upon the stipulated facts, this case does not present the circumstances Sections 122 and 123 are intended to address. There was no transfer by MERS or BAC to a third party, and there is no challenge by an undisclosed or improperly disclosed principal to the actions of MERS or BAC. Stated simply, this case presents no conflicting claims by a principal and an agent from which a third party needs protection, and the statutes therefore do not apply.

## CONCLUSION

[¶18] We answer the certified question in the negative. Wyo. Stat. Ann. §§ 34-2-122 and 123 are notice statutes intended to protect third parties from conflicting claims of a principal and agent. The Mortgage at issue in this case was not required to comply with Sections 122 and 123 because a) the recorded assignment of the Mortgage did not identify the grantee as acting in a representative capacity; and b) there were no

conflicting claims of a principal and agent from which a third party would require protection.